**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IRIS M. NOCCHI,

Plaintiff,

v. No. CV 20-101 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Iris Nocchi's *Motion to Reverse or Remand Decision of Administrative Law Judge* (the "Motion"), (Doc. 18), and *Memorandum in Support of Motion to Reverse or Remand Administrative Decision*, (Doc. 19), both filed June 29, 2020; Defendant Commissioner Andrew Saul's *Response to Plaintiff's Motion to Reverse or Remand for Rehearing* (the "Response"), (Doc. 21), filed August 28, 2020; and Ms. Nocchi's *Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand for Rehearing* (the "Reply"), (Doc. 22), filed September 11, 2020.

Ms. Nocchi filed an application for disability insurance benefits on December 28, 2016, alleging disability beginning August 14, 2015. (Administrative Record "AR" 125, 147). In her application, Ms. Nocchi claimed she was unable to work due to morbid obesity, chronic arthritis in both knees, lymphedema, post-traumatic stress disorder ("PTSD"), and chronic sleep apnea. (AR 64-65). Ms. Nocchi's application was denied initially on August 3, 2017, and upon reconsideration on February 1, 2018. (AR 89, 97). Ms. Nocchi requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on September 12, 2018, before ALJ Cole Gerstner. (AR 16, 25).

At the hearing, Ms. Nocchi appeared before ALJ Gerstner with her attorney Laurence Guggino and impartial Vocational Expert ("VE") Kola Brown. (AR 16). ALJ Gerstner issued his decision on February 8, 2019, finding Ms. Nocchi not disabled at any time between her alleged disability onset date through her date last insured. (AR 24). Ms. Nocchi then requested review of ALJ Gerstner's decision before the Appeals Council, which was denied on November 30, 2019. (AR 1). Ms. Nocchi now challenges ALJ Gerstner's February 8, 2019 decision denying her claim for disability insurance benefits. *See* (Doc. 18); (Doc. 19).

Ms. Nocchi, represented by her attorney Laurence Guggino, argues in her Motion ALJ Gerstner erred in five respects: (1) he incorrectly determined Ms. Nocchi did not meet the listing for ineffective ambulation; (2) he failed to consider lymphedema or lipoedema and urinary incontinence in determining Ms. Nocchi's residual functional capacity ("RFC"); (3) he incorrectly weighed Ms. Nocchi's credibility in determining her RFC, and as a result incorrectly concluded she could perform her past relevant work and other work in the national economy; (4) he erred in affording greater weight to the opinions of the state agency physicians than those of her treating physician; and (5) the first hypothetical question posed to the VE did not precisely convey Ms. Nocchi's physical impairments. (Doc. 18 at 3).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Gerstner erred in his step three determination of Ms. Nocchi's ability to ambulate effectively, the Court finds Ms. Nocchi's Motion is **GRANTED**, and this case is

**REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v.*

*Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. § 404.1505(a) (2019). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520 (2019).

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1. (2019); or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1)); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

In her application, Ms. Nocchi claimed she was unable to work due to morbid obesity, chronic arthritis in both knees, lymphedema, PTSD, and chronic sleep apnea. (AR 64-65). At step one, ALJ Gerstner determined Ms. Nocchi had not engaged in substantial gainful activity from August 14, 2015, the alleged disability onset date, through June 30, 2016, her date last insured. (AR 18). At step two, ALJ Gerstner found Ms. Nocchi had the severe impairments of bilateral knee osteoarthritis, lumbar spine degenerative disc disease, and morbid obesity. (AR 18).

At step three, ALJ Gerstner determined Ms. Nocchi's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 20). ALJ Gerstner then found Ms. Nocchi had

the RFC to perform "sedentary work." (AR 20). In addition, ALJ Gerstner found Ms. Nocchi was restricted to occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, and crouching; and occasionally working at unprotected heights and around moving mechanical parts. (AR 20). Finally, ALJ Gerstner found Ms. Nocchi could not climb ladders, ropes, or scaffolds, and could not crawl. (AR 20).

In formulating Ms. Nocchi's RFC, ALJ Gerstner stated he considered her symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 20). ALJ Gerstner stated he also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1527. (AR 20). He concluded that while some of Ms. Nocchi's impairments could be expected to cause her alleged symptoms, the intensity, persistence, and limiting effects Ms. Nocchi described were not consistent with the evidence in the record. (AR 21).

In evaluating the evidence, ALJ Gerstner afforded "great weight" to the opinions of the state agency physicians. (AR 22). ALJ Gerstner assigned "moderate weight" to the opinion of Dr. James Steier, M.D., Ms. Nocchi's treating physician, because some of Dr. Steier's findings were supported by the evidence while others were internally inconsistent. (AR 22-23). Conversely, ALJ Gerstner afforded "only partial weight" to the third-party function report submitted by Ms. Nocchi's partner, because it was inconsistent with the medical evidence and it described activities engaged in by Ms. Nocchi after her date last insured. (AR 22.)

At step four, ALJ Gerstner found Ms. Nocchi was able to perform her past relevant work as a night auditor and benefit clerk. (AR 23). In relying on the VE's

testimony, ALJ Gerstner found the physical and mental demands of Ms. Nocchi's past work as a hotel clerk and night auditor, as actually and generally performed, did not exceed Ms. Nocchi's RFC. (AR 23).

ALJ Gerstner proceeded to step five, despite his finding that Ms. Nocchi was capable of performing past relevant work. (AR 23). ALJ Gerstner explained Ms. Nocchi was defined as "a younger individual," had at least a high school education, and could communicate in English. (AR 23). Relying on the VE's testimony, ALJ Gerstner found, considering Ms. Nocchi's age, education, work experience, and assessed RFC, she could perform other work as a circuit board assembler, document preparer, call-out operator, surveillance system monitor, toy stuffer, and final assembler. (AR 24). After finding Ms. Nocchi was able to perform other work existing in significant numbers in the national economy, ALJ Gerstner concluded she was "not disabled" as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 23-24).

**IV. Analysis**

Ms. Nocchi presents five arguments in her Motion. *See* (Doc. 18); (Doc. 19). First, Ms. Nocchi posits ALJ Gerstner erred in determining she did not meet the listing for ineffective ambulation. (Doc. 19 at 5-6). Second, Ms. Nocchi contends ALJ Gerstner failed to consider lymphedema or lipoedema and urinary incontinence in determining her RFC. *Id.* at 6-9. Third, according to Ms. Nocchi, ALJ Gerstner incorrectly weighed her credibility in determining her RFC, and, as a result, he incorrectly concluded she could perform her past relevant work as a benefits coordinator and night auditor and other work as outlined in his step five findings. *Id.* at 9-11. Fourth, Ms. Nocchi contends ALJ Gerstner erred in affording the opinions of the state agency physicians great weight

whereas he afforded only moderate weight to her treating physician, Dr. Steier. *Id.* at 11-15. Fifth, Ms. Nocchi states ALJ Gerstner's first hypothetical question posed to the VE did not precisely convey Ms. Nocchi's physical impairments. *Id.* at 13-14. For these reasons, Ms. Nocchi contends the Commissioner's decision should be reversed or, alternatively, remanded for further administrative proceedings. (Doc. 18 at 4).

In response, the Commissioner maintains ALJ Gerstner considered Ms. Nocchi's lymphedema or lipoedema and urinary incontinence in his RFC determination, even though he found neither to be severe at step two. (Doc. 21 at 7-10). Next, the Commissioner contends Ms. Nocchi was able to ambulate effectively between the alleged disability onset date and the date last insured, but even if she could not, she nevertheless failed to satisfy two other criteria necessary for showing her impairment matched a Listing. *Id.* at 10-13. Further, the Commissioner asserts ALJ Gerstner reasonably found Ms. Nocchi's statements regarding her symptoms less than reliable. *Id.* at 13-15. The Commissioner then contends ALJ Gerstner properly weighed the opinions of the state agency physicians. *Id.* at 16-17. Specifically, the Commissioner maintains ALJ Gerstner reasonably afforded great weight to the state agency physicians' opinions, because they accounted for all of Ms. Nocchi's impairments despite not specifically discussing her knee impairments, edema, or urinary incontinence. *Id.* at 16. The Commissioner also explains ALJ Gerstner appropriately afforded moderate weight to Dr. Steier's opinion, because his restriction on Ms. Nocchi's ability to grasp objects was contradicted by the evidence. *Id.* at 16. Finally, the Commissioner asserts ALJ Gerstner was not required to include limitations in his hypothetical question to the VE which he found were not supported by the evidence. *Id.*

at 18-19. As such, the Commissioner contends Ms. Nocchi's claim for disability was properly denied at the administrative level. *Id.* at 19.

*A. The ALJ's Consideration of Ms. Nocchi's Ability to Ambulate*

First, Ms. Nocchi challenges ALJ Gerstner's finding that she did not meet or equal the criteria for ineffective ambulation as listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b1. (Doc. 19 at 6). Particularly, Ms. Nocchi alleges treatment notes from her treating physician, Dr. Steier, and Davita Medical Group ("Davita") indicate she had a body mass index ("BMI") of 73.53, classifying her as morbidly obese, and she suffered from hypoxia and shortness of breath. *Id*. at 2, 6. She also points to treatment notes from New Mexico Orthopaedics, dated June 9, 2016, that show her gait was slow to transfer and she used a cane. *Id*. Further, she cites the Adult Functional Capacity Evaluations completed by herself and her partner as similarly stating she used a cane to walk and an electric cart to shop. *Id*. The Adult Functional Capacity Evaluations also state she was unable to walk more than a block without assistance. *Id*. Based on this, Ms. Nocchi contends ALJ Gerstner's finding that she could ambulate effectively is unsupported by substantial evidence. *Id*.

In response, the Commissioner maintains Ms. Nocchi was able to ambulate effectively between August 14, 2015, and June 30, 2016. (Doc. 21 at 12). The Commissioner alleges Ms. Nocchi used a cane only sometimes, which did not limit both of her upper extremities, and "the assistance of just one cane does not meet the definition of ineffective ambulation." *Id.* at 12-13. Secondly, the Commissioner argues treatment notes indicate Ms. Nocchi could walk with a normal gait at times, and Ms. Nocchi's testimony showed she could walk approximately 300 feet and perform daily

chores and activities. *Id.* at 13. Finally, the Commissioner contends, even assuming Ms. Nocchi was unable to ambulate effectively, her bilateral knee osteoarthritis would nevertheless not have met or equaled a listed impairment because she failed to present evidence of a gross anatomical deformity. *Id.* at 11-12.

In reply, Ms. Nocchi contends ALJ Gerstner failed to make specific factual findings regarding her ability to ambulate effectively, and thus his finding that she could ambulate effectively was conclusory. (Doc. 22 at 4). Additionally, in response to the Commissioner's argument that Ms. Nocchi failed to show a gross anatomical deformity, Ms. Nocchi states ALJ Gerstner made no findings in that regard. *Id.* at 3.

At step three in the SEP, the ALJ determines whether the claimant's impairment or combination of impairments either meet or equal one of the listings of presumptively disabling impairments. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.152620, 416.920(a)(4)(iii). The Tenth Circuit has explained that, in determining a claimant does not meet or equal any listed impairment at step three, the ALJ must "discuss the evidence and explain why he found that the [claimant] was not disabled at step three" in order to provide the court with the guidance necessary to perform "meaningful judicial review." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

Section 1.00B2b of the Listings defines "inability to ambulate effectively" as follows:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . .

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b1-2.

Here, ALJ Gerstner found Ms. Nocchi's impairments did not meet the severity of the Listing for major dysfunction of a joint, because Ms. Nocchi did not "ha[ve] the degree of difficulty in ambulating as defined in 1.00B2b." (AR 19-20). In arriving at this finding, ALJ Gerstner failed to consider relevant evidence of Ms. Nocchi's ability to ambulate effectively, and the evidence he did consider was effectively ignored in his decision-making. *See Langley*, 373 F.3d at 1118 (An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it") (quoting *Bernal*, 851 F.2d at 299) (internal quotation marks omitted). The Court is thus left with no guidance to perform a meaningful review of ALJ Gerstner's analysis. This is particularly concerning because of the abundance of evidence in the record supporting Ms. Nocchi's allegations of her inability to ambulate effectively.

The record contains significant evidence that suggests Ms. Nocchi was unable to ambulate effectively, as defined by the Listings, between August 14, 2015, and June 30, 2016. For instance, on September 8, 2015, during a visit to establish care with Davita, Ms. Nocchi used a cane to ambulate. (AR 245). Treatment notes from the visit indicate

she "needs to increase her activity level but is limited by musculoskeletal issues currently." (AR 241). This suggests, as of September 8, 2015, Ms. Nocchi's lower-extremity impairments were "interfer[ing] very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b1. While ALJ Gerstner acknowledges Ms. Nocchi's use of a cane during the visit, he fails to specifically consider the opinion that her musculoskeletal impairment was limiting her activity level. (AR 21).

Ms. Nocchi exhibited similar lower-extremity impairments and breathing difficulty during follow-up visits to New Mexico Orthopaedics and Davita in September and October 2015. *See generally* (AR 237-240, 1188-1190). Treatment notes describe significant swelling throughout her lower extremities, a stooped and guarded posture, her gait as slow to transfer, and her use of a cane to ambulate. (AR 1190). An examination revealed her bilateral extremities were tender to the touch and she had "very large legs with multiple folds." (AR 240). Treatment notes further state Ms. Nocchi was ordered oxygen and CPAP for her breathing difficulties. (AR 237-239). ALJ Gerstner cites Ms. Nocchi's use of a cane during one of these follow-up visits and her lower-extremity impairments, but he omits her breathing difficulties altogether. (AR 21).

Additionally, at her October 2015 visit to Davita, Ms. Nocchi weighed 423 pounds, and her BMI was 77.37. (AR 240). The National Institute of Health ("NIH") classifies an individual as obese if they have a BMI of 30.0 or above, and morbidly obese if they have a BMI of 40.0 or above. SSR 02-1p (rescinded and replaced by SSR 19-2p effective May 20, 2019). As ALJ Gerstner notes in his decision, Ms. Nocchi's BMI far exceeded the level for morbid obesity. (AR 20).

During subsequent progress and treatment visits, Ms. Nocchi's symptoms persisted and, in some instances, appear to have worsened. For instance, on November 4, 2015, Ms. Nocchi received bilateral knee injections, and although her gait was normal without an assistive device as ALJ Gerstner mentions, she had crepitus in her knees with tenderness on palpation. (AR 21-22, 915). Further, during a visit to Davita on May 20, 2016, Ms. Nocchi was assessed for hypoxia, ordered a daytime oxygen study, and she would likely "need portable oxygen through the day as well as at night." (AR 228). Treatment notes also indicate she had pedal edema. (AR 228). ALJ Gerstner's decision cites only Ms. Nocchi's pedal edema, and otherwise fails again to mention her breathing difficulties. (AR 22).

Most notably, ALJ Gerstner's decision altogether omits Ms. Nocchi's June 29, 2016 visit to New Mexico Orthopaedics, which revealed crucial evidence regarding her ability to ambulate effectively. *Compare* (AR 1192) *with* (AR 19-22). Treatment notes indicate her gait was antalgic, and radiographs of both knees revealed severe joint space narrowing, subchondral cyst formation, and osteophyte formation. (AR 1194). The treatment notes further opine Ms. Nocchi "has severe [osteoarthritis] of the knee/hip which has failed conservative medical treatment." *Id*. Importantly, this visit took place the day before Ms. Nocchi's date last insured. This suggests treatment had not improved her lower-extremity impairments between her alleged disability onset date and her date last insured. ALJ Gerstner's failure to consider this evidence is glaring.

Certainly, ALJs are not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. But they must give good reasons for their findings—reasons that are sufficiently specific to allow for meaningful review. *Fischer-Ross v. Barnhart*, 431 F.3d

729, 734 (10th Cir. 2006). ALJ Gerstner's findings give only very a limited indication as to why the medical evidence did not meet the Listing's definition of "inability to effectively ambulate." The Court cannot determine why, for instance, ALJ Gerstner omitted Ms. Nocchi's June 2016 visit to New Mexico Orthopaedics in which an examination revealed an antalgic gait, severe join spacing in her knees, and "severe osteoarthritis of the kneep/hip which has failed conservative medical treatment." *See supra* 13. The Court cannot tell why ALJ Gerstner failed to mention, in his discussion of her visit to Davita in May 2016, that she was diagnosed with hypoxia and would need portable oxygen. *See supra* 12. This is significant, probative evidence ALJ Gerstner was required to discuss in order for substantial evidence to support his findings. *See Doyal*, 331 F.3d at 764 (stating the ALJ's reasons for assigning a particular weight to evidence must be supported by substantial evidence); *see also Clifton*, 79 F.3d at 1009-10 (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted).

The Commissioner offers justifications for ALJ Gerstner's determination, citing Ms. Nocchi's use of only one cane to ambulate, and her November 4, 2015 visit to Dr. Steier during which she walked with a normal gait. (Doc. 21 at 12-13). However, ALJ Gerstner failed to explain why evidence of Ms. Nocchi's normal gait on one occasion was discussed and yet evidence revealing her to have an "antalgic" and "slow-to-transfer" gait was omitted. Nor did ALJ Gerstner address Ms. Nocchi's use of only one cane instead of two, which the Commissioner now raises. The Court notes, in any event, the use of only one cane does not, of itself, render a claimant able to ambulate

effectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00B2b2 ("[E]xamples of ineffective ambulation include, *but are not limited to*, the inability to walk without the use of a walker, two crutches or two canes . . .") (emphasis added); *see also Burrola v. Astrue*, No. 2:10-CV-770 GBW, 2011 WL 13289693, at *5 (D.N.M. Aug. 5, 2011) ("Of course, [the] examples [in section 1.00B2b2] are not requirements of a finding of ineffective ambulation. The touchstone is whether the person is capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.") (internal quotations omitted). The Court finds the Commissioner's *post hoc* arguments here unavailing. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision.").

In sum, the Court finds ALJ Gerstner's conclusion that Ms. Nocchi did not meet the Listings' definition for "inability to ambulate effectively" is unsupported by substantial evidence. It thus constitutes harmful and reversible error. Therefore, the Court finds that remand is appropriate.

*B. Ms. Nocchi's Request for Issuance of a Fully Favorable Decision*

Finally, Ms. Nocchi asks the Court to reverse the ALJ's decision and issue a fully favorable decision. (Doc. 18 at 4). It is within the Court's discretion to remand for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Among other factors, courts may consider the length of time a case has been pending and, given the available evidence, whether remand for additional fact-finding would be useful or merely delay receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, approximately four years have passed since Ms. Nocchi applied for benefits. (AR 125, 147). This is not an unusually long period of time as compared to similar Social Security cases. Moreover, the Court does not find that additional fact-finding would be futile. The Court will thus not conclude there is substantial and uncontradicted evidence in the record that indicates Ms. Nocchi is disabled. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining the court may consider whether the ALJ followed the rules of law when weighing certain evidence, but may not reevaluate the evidence or substitute its judgment for the judgment of the Commissioner). The Court therefore will not remand for issuance of a fully favorable decision.

## V. Conclusion

For the foregoing reasons, the Court finds the ALJ committed harmful legal error when he failed to either discuss evidence relevant to Ms. Nocchi's ambulation, why he rejected such evidence, or why he determined that despite conflicting evidence Ms. Nocchi was nevertheless able to ambulate effectively. Because the Court finds this is a harmful error, the Court will not address Ms. Nocchi's remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Nocchi's *Motion to Reverse or Remand Decision of Administrative Law Judge*, (Doc. 18), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE